UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) LIZZIE JEAN McCRAY, AZA REED, ) AND FUNERAL FUNDING CENTER, ) INC., ) ) Defendants. ) | Case No. 4:11-CV-1488 CDP |

## MEMORANDUM AND ORDER

Metropolitan Life Insurance Company brought this interpleader action to resolve conflicting claims to the proceeds of a life insurance policy covering decedent Johnny Walter McCray. After MetLife deposited the proceeds into the court registry, I discharged it in accordance with a stipulated consent motion.

Johnny McCray's former wife, Lizzie Jean McCray, and his widow, Aza Reed, each claim entitlement to the policy proceeds. Lizzie Jean McCray argues that their divorce decree required Johnny McCray to name her as beneficiary of the policy. Reed argues that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* preempts the benefits provision of the divorce decree. Under ERISA, Reed contends, the life insurance plan documents govern, and those

documents identify her as beneficiary because she was married to Johnny McCray at the time of his death.

An additional entity, Funeral Funding Center, Inc., is also party to this action. FFCI provided funeral services in connection with Johnny McCray's death. It accepted, as partial payment, an assignment of Reed's right to receive the proceeds, and it also makes a claim to some of the interpleaded funds.

I conclude that ERISA preempts the state decree. Reed, and not McCray, is entitled to the proceeds of the policy, and so I will grant her motion for summary judgment and deny McCray's. But the cross-claim of FFCI against Reed remains for resolution, so no final judgment or payout order can issue at this time. My analysis follows.

I.      **Legal Standard**

In determining whether to grant summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the nonmoving party may not rest on the allegations in its pleadings but must, by affidavit and other

evidence, set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(c)(1), (e).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Matsushita*, 475 U.S. at 587.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits."  *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).  Instead, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law.  *Husinga v. Federal–Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

As to each summary judgment motion, I have viewed the facts in the light most favorable to the nonmoving party and the following is established for purposes of the summary judgment motion.  The vast majority of the facts – including all facts that are material – are undisputed.

## II.     Background

Johnny Walter McCray worked for Chrysler and participated in the DaimlerChrysler Group Insurance Program, an employee welfare benefit plan

regulated by ERISA.[1]  The Insurance Program was sponsored by Chrysler and funded by a MetLife group life insurance policy.  The Insurance Program allowed participants the right to designate a beneficiary for their life insurance benefits.  According to the Summary Plan Description, if the participant did not designate a beneficiary, the benefits would be dispensed to either the participant's surviving spouse, children, parents (or their survivors), siblings, or executor.

The parties dispute whether Johnny McCray ever designated a beneficiary in accordance with the plan.  Reed says he designated her; McCray says there was no designation.  But they do not dispute that Aza Reed was Johnny McCray's surviving spouse at the time of his death.

Previously, Johnny McCray had been married to Lizzie Jean McCray.  They separated in 2004 and obtained a Judgment of Legal Separation in Missouri state court.  The judgment includes the following benefits provision:

> Husband shall maintain Wife as beneficiary for all benefits that are available without premium payment by Husband for his other employment and union benefits with Daimler Chrysler Corporation and United Auto Workers union.

---

[1] The parties agree that the Insurance Program is covered by ERISA.  But Reed briefly argues that the program may not be an "employee welfare benefit plan." (Mem. in Opp., p. 5.) That a group life insurance policy constitutes an employee *welfare* benefit plan – as opposed to an employee *pension* benefit plan – is beyond dispute.  *See, e.g., Matschiner v. Hartford Life & Acc. Ins. Co.*, 622 F.3d 885, 887 (8th Cir. 2010).

In 2009, the state court ordered that Judgment converted into a Judgment for Dissolution of Marriage "upon the same terms as expressed in said Judgment for Legal Separation."

Johnny McCray died on February 23, 2011.  He was still enrolled in the Life Insurance Program, and the plan provided that upon his death, his beneficiary became entitled to his life insurance benefits, which totaled $64,500.  A few days after Johnny McCray died, Reed completed a claim for his life insurance benefits from the Program.  She also executed a funeral home assignment for $8,256.38, in which she agreed to a partial assignment of her life insurance benefits claim in repayment for funeral services for Johnny McCray.  This assignment was eventually reassigned to FFCI.

## III.  Discussion

In its interpleader complaint, MetLife stated that it could not determine "whether a court in the Eighth Circuit would find that ERISA preempts the Divorce Decree, and if not, whether the Divorce Decree is a valid beneficiary designation for the Plan Benefits."  MetLife stated that it believed these legal conclusions would determine whether McCray or Reed was entitled to the life insurance policy proceeds.

I conclude that ERISA expressly preempts the benefits provision in the divorce decree.  Therefore, under the ERISA "plan documents rule," I must look to

the Insurance Program documents, and not state law, to determine the beneficiary of the proceeds of Johnny McCray's life insurance policy. Those documents make clear that Aza Reed is entitled to those benefits because she is Johnny McCray's surviving spouse. For this reason, the unresolved factual issue regarding whether Johnny McCray ever formally designated Reed as his beneficiary is immaterial.

**A.**     *Preemption*

ERISA applies to any "employee benefit plan" established or maintained by an employer. 29 U.S.C. § 1003. The purpose of ERISA is to furnish a comprehensive, "uniform regulatory regime" for employer-sponsored plans that provide pension and welfare benefits to employees. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). *See also Daley v. Marriott Int'l., Inc.*, 415 F.3d 889, 894–95 (8th Cir. 2005). To achieve this goal, ERISA includes expansive preemption provisions "intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health*, 542 U.S. at 208 (quotation marks omitted). There are two types of ERISA preemption: "complete preemption" under 29 U.S.C. § 1132 and "express preemption" under 29 U.S.C. § 1144. *Prudential Ins. Co. of Am. v. Nat. Park Med. Cntr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005). Only express preemption is at issue here.

Under ERISA's express preemption clause, ERISA supersedes state laws that "relate to any employee benefit plan" covered by ERISA. 29 U.S.C. §

1144(a). The phrase "relate to" is defined according to its "normal sense," so that a claim relates to an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983). The United States Supreme Court has acknowledged that this definition "still leaves us to question whether [state] laws have a 'connection with' the ERISA plans." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995).

To answer this question, the Court set out two factors that courts should use to determine whether a state law has a "forbidden connection" with an ERISA-covered employee benefit plan and is thus preempted. A court should consider (1) "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive" and (2) "the nature of the effect of the state law on ERISA plans." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001).

In *Egelhoff*, the Supreme Court held that ERISA expressly preempted a state statute providing that the designation of a spouse as beneficiary of certain assets was revoked automatically upon divorce. When the *Egelhoff* insured died, the administrator of his life insurance policy paid the proceeds to his ex-wife because she was still named as beneficiary in the plan documents. The insured's children sued, claiming that once the state statute was applied, the ex-wife's designation

became invalid. They argued that under state law, they were entitled to the proceeds as their father's statutory heirs.

Considering ERISA's objectives and the potential effect of the statute on ERISA plans, the *Egelhoff* Court found that the state statute "implicate[d] an area of core ERISA concern" because it required administrators to "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Id.* at 147. This requirement violated ERISA's command that a plan administrator must administer the plan "in accordance with the documents and instruments governing the plan." 28 U.S.C. § 1104(a)(1)(D). *See also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 303 (2009) (identifying § 1104(a)(1)(D) as the "plan documents rule"). Applying the statute would frustrate "nationally uniform plan administration," one of ERISA's primary purposes. *Id.* at 148. Further, upholding the law would "undermine the congressional goal of minimizing the administrative and financial burdens on plan administrators." *Id.* at 149–50 (internal quotation and brackets omitted).

In 2009, the Supreme Court reaffirmed *Egelhoff*'s central holding. *Kennedy*, 555 U.S. at 303. The *Kennedy* Court held that the administrator of a life insurance plan had done "its statutory ERISA duty" when it paid out proceeds to the beneficiary designated under the plan documents, without considering that the designated beneficiary had waived its right to the proceeds in a state-court divorce

– 8 –

decree. 555 U.S. at 300. The Court concluded that the state court waiver did not control the disposition of benefits from the insured's group life insurance policy. Rather, the plan administrator had properly looked only to the beneficiary designated in accordance with the plan documents.

Applying *Egelhoff* and *Kennedy* in 2010, the Eighth Circuit reversed a district court order compelling a life insurance plan administrator to consider the effect of a state divorce decree. *Matschiner v. Hartford Life & Acc. Ins. Co.*, 622 F.3d 885 (8th Cir. 2010). The insured's daughters had sued the administrator, arguing that their deceased mother had gotten divorced after designating her husband as the primary beneficiary. The insured had intended to name new beneficiaries, but the replacement form remained with her personal effects and had not been submitted to the company before her death. The Eighth Circuit held that under the plan documents rule, the administrator could not be required to consider the divorce decree or the amended form. *Id.* at 888 ("the plan documents, not the divorce decree, are controlling").

In light of the cases above, I conclude that the benefits provision in the McCrays' divorce decree is expressly preempted by ERISA.[2] Resort to Missouri

---

[2] To support her argument of non-preemption, McCray relies upon *Equitable Life Assurance v. Crysler*, a pre-*Egelhoff* case in which the Eighth Circuit held that ERISA did not preempt a state court divorce decree that determined the disposition of life insurance proceeds. 66 F.3d 944 (8th Cir. 1995). It is not clear that *Crysler*'s nuanced holding runs contrary to *Egelhoff* and *Kennedy*, but to the extent that it does, it is no longer good law. *See Kennedy*, 555 U.S. at 302 (abrogating

– 9 –

dissolution documents would run contrary to ERISA's plan documents rule. Requiring the ERISA plan administrator to interpret a state court dissolution document to determine plan beneficiaries would interfere with ERISA's goals of uniformity and ease of administration. Because there is not even an option for an ERISA plan administrator to comply "*ex ante*, by amending the plan," *Egelhoff*, 532 U.S. at 151, such a result would be a possibility each time a beneficiary became entitled to ERISA plan benefits. This would have a continuing – and perhaps costly – effect on ERISA-regulated employee benefit plans. *See Egelhoff*, 532 U.S. at 150 (administrative and financial burdens on ERISA plan administrators are "ultimately borne by the beneficiaries"). Because the benefits provision in the divorce decree is expressly preempted, the plan documents govern who receives the life insurance policy proceeds.

**B.**     *Plan Documents*

Having determined that the plan documents control who is entitled to the proceeds from Johnny McCray's life insurance policy, I must turn to the content of those documents.

Under 29 U.S.C. § 1022(a), an ERISA plan administrator must publish a Summary Plan Description (SPD), which is considered part of the plan documents.

---

*Mohamed v. Kerr*, 53 F.3d 911, 914 (8th Cir. 1995) (requiring a "fact-driven determination" of the legal effect of a divorce decree in order to select an ERISA plan beneficiary)).

*Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agri. Implement Workers of Am.*, 687 F.3d 1076, 1085 (8th Cir. 2012).

Here, MetLife attached a copy of the SPD of the DaimlerChrysler Group Insurance Program to its interpleader complaint. Under the SPD, there were only two ways for Johnny McCray to designate a beneficiary of his choice for the Group Insurance Program: (1) by calling to request a form or (2) by designating a beneficiary on the plan's website. The parties dispute whether Johnny McCray ever designated Reed as beneficiary in one of these two ways. However, this issue of fact turns out to be immaterial because Reed is entitled to the proceeds of the life insurance policy as Johnny McCray's surviving spouse regardless of whether she was formally designated as beneficiary.[3]

Under the SPD, if a Program participant does not designate a beneficiary, the plan administrator selects a substitute beneficiary from among a list of relatives and the insured's estate. This provision is known as a "facility-of-payment clause." Under the facility-of-payment clause in the Program SPD, the plan administrator must choose an alternate beneficiary from among the substitute beneficiaries listed, which includes the Program participant's surviving spouse.

---

[3] The divorce decree cannot operate as a beneficiary designation because the plan documents do not allow a plan participant to name his beneficiary in that way. *See, e.g. Kennedy*, 555 U.S. at 304 (ex-wife's waiver of rights to life insurance policy proceeds that appeared in a divorce decree was not "made in the way required" by the SPD and plan administrator properly disregarded it); *Matschiner,* 622 F.3d at 889 ("divorce decree was irrelevant" because insured never changed her designated beneficiary according to plan procedures).

It is undisputed that Aza Reed was married to Johnny McCray at the time of his death. Applying the ERISA plan documents rule, Reed is among the alternate beneficiaries entitled to the proceeds of the life insurance policy. Conversely, as Johnny McCray's former spouse, Lizzie Jean McCray is not among those alternate beneficiaries, and the plan documents rule would have prohibited the plan administrator from using the divorce decree (rather than the facility-of-payment clause) to select a beneficiary. *See, e.g., Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 865 (7th Cir. 2011) (when insured's designated beneficiary was deceased, plan administrator who followed facility-of-payment clause and selected children as beneficiaries of life insurance proceeds did not abuse discretion by not considering mother's claim to same). *See also Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1328 (8th Cir. 1995) (where plan administrator did not decide certain issues, district court can make de novo determination at summary judgment stage).

Therefore, an examination of the plan documents reveals that only Reed – and not McCray – is entitled to the life insurance policy proceeds.

**C.**   *Qualified Domestic Relations Order*

The ERISA plan documents rule is subject to a narrow exception. In addition to plan documents, a plan administrator must also consider Qualified

– 12 –

Domestic Relations Orders (QDROs) when determining who is entitled to ERISA plan benefits.[4] *See* 29 U.S.C. §§ 1056(d)(3), 1144(b)(7).

ERISA defines a QDRO as a special type of domestic relations order that "creates or recognizes the existence of an alternate payee's right" to all or some of "the benefits payable with respect to a participant under a plan." *Id.* § 1056(d)(3)(B)(i)(I). ERISA provides that a domestic relations order "meets the requirements" of a QDRO "only if such order <u>clearly specifies</u> . . . each plan to which such order applies." *Id.* § 1056(d)(3)(C) (emphasis added).

The July 8, 2009 divorce decree actually consists of four documents. First, there is a handwritten "Judgment for Dissolution of Marriage" signed by the parties, their lawyers, and the judge. This is the document that states that the 2004 Judgment of Legal Separation is converted to a dissolution judgment "upon the same terms as expressed" in the legal separation. Also entered on July 8, 2009 is a "Judgment" on a QDRO form. That "QDRO Judgment" explicitly refers to Johnny McCray's pension benefit. It does not mention the life policy at issue here. The 2004 Judgment of Legal Separation itself consists of two documents: a form judgment with handwritten entries and an incorporated typewritten Exhibit 1. The

---

[4] The Eighth Circuit has not definitively ruled that the QDRO exception applies to employee *welfare* benefit plans (like this life insurance policy) as well as employee pension benefit plans, but the majority of circuits have held that the QDRO exception applies to both types of plans. *See Metro. Life Ins. Co. v. Hanson*, No. 08-CV-248, 2009 WL 3268640 (D. N.H. Oct. 1, 2009), at *3 (collecting cases).

benefits provision is in Exhibit 1. That provision also does not specifically mention the life insurance policy, but instead refers to "benefits that are available without premium." McCray has provided an affidavit from MetLife stating that the life insurance policy was a benefit "available without premium."

Although the "QDRO Judgment" entered in 2009 specifying treatment of the pension benefits appears to qualify as a QDRO, the 2004 benefits provision does not. As stated above, ERISA requires a QDRO to "clearly specify" which benefits are included. The benefits provision here does not even reference "life insurance," and a plan administrator would not be able to identify the plans covered by the benefits provision just by looking at the provision alone. *See Nat. Auto. Dealers & Assoc. Retirement Trust v. Arbeitman*, 89 F.3d 496, 502 (8th Cir. 1996) (in interpleader action over pension benefits, prenuptial agreement that "failed entirely to mention the pension plans" did not meet similar ERISA statutory requirement for spousal waiver under 29 U.S.C. § 1055(c)).

Here there are four separate documents that make up the final divorce decree. The only one that purports to be a QDRO is limited to pension benefits and does not mention life insurance. Even the benefits clause contained in Exhibit 1 to the Judgment of Legal Separation and therefore incorporated into the divorce decree does not specify or mention life insurance. The fact that an affidavit from MetLife is necessary to clarify that the life insurance is even arguably contained in

this provision shows that it does not meet ERISA's "clearly specifies" requirement for QDROs.  Requiring a plan administrator to study the evidence with the detail the parties here and the court have studied it would run contrary to the express statutory commands of 29 U.S.C. § 1056, and would subvert ERISA's goals of uniformity and administrative ease.

In sum, the record makes clear that the divorce decree is not a QDRO as to the life insurance policy because it does not clearly specify that the benefits provision includes that policy.  To the extent there may have been a QDRO here, it only applied to the pension benefits.

**D.** *Constructive Trust*

McCray suggests that I should impose a constructive trust over the proceeds.  Applying state equitable doctrines under these circumstances would be inconsistent with ERISA's preemptive force and its explicit statutory commands.  *See Arbeitman*, 89 F.3d at 502.

**E.** *FFCI's Costs and Attorneys' Fees*

Reed and FFCI moved jointly for summary judgment, and jointly argued that Reed, and not McCray, is entitled to the life insurance proceeds.  But FFCI's cross-claim against Reed remains unresolved.  In their pleadings, Reed and FFCI dispute whether Reed must reimburse FFCI for its costs and attorneys' fees in

litigating this action.  This issue remains for resolution, and no judgment will issue until FFCI's cross-claim against Reed is resolved.

## IV.     Conclusion

Each party complains that the other failed to comply with the procedural requirements for filing motions for summary judgment.  They are both somewhat correct, and neither complied completely with the local rules.  I choose to ignore their procedural defects, and this summary judgment order is based only on the evidence that is admissible and uncontested.

Based on the foregoing,

**IT IS HEREBY ORDERED** that Lizzie Jean McCray's Motion for Summary Judgment [#36] is hereby denied, and the Joint Motion of Aza Reed and FFCI for Summary Judgment [#37] is granted as set forth above.

**IT IS FURTHER ORDERED** that Reed & FFCI's Motion for Leave to File Statement of Uncontroverted Facts [#40] is granted.

**IT IS FINALLY ORDERED** that Aza Reed and Funeral Funding Center, Inc., shall, no later than **February 28, 2013**, file either (1) cross-motion s for summary judgment as to FFCI's cross-claim against Reed; (2) notice to the Court that a trial on this cross-claim will be required and so no summary judgment motions are being filed, or (3) a statement that they have resolved the issues raised in the cross-claim.  If they have resolved the issues, they must, by that same date,

file a proposed pay-out order for disbursement of the funds deposited into the registry of this Court, plus any interest accrued and less any administrative expenses, which must provide all information required by Local Rule 13.04(D)(2).

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 1st day of February, 2013.